# EXHIBIT-A

---

## INDEX OF EXHIBITS

---

1.      Copy of the Court Docket Sheet

2.      Plaintiffs' Original Petition

3.      Citation issued and return of service to the City of Donna, Texas

4.      Citation issued and return of service to Officer Ruben Munoz

5.      Citation issued and return of service to Officer A J Arevalo

6.      Citation issued and return of service to Sgt. Alex Martinez

Skip to Main Content   Logout   My Account   Search Menu   New Civil Search   Refine Search   Back

Location : All Courts    Images

# REGISTER OF ACTIONS
## CASE NO. C-0626-18-F

| | |
|---|---|
| MARIA ISABEL CARDENAS INVIDIUALLY AS REPRESENTATIVE OF THE ESTATE OF INOCENCIO CARDENAS, DECEASED, DANIEL CARDENAS ALLEN ANDRES CARDENAS AND NORMA ISABEL JUAREZ VS. THE CITY OF DONNA RUBEN MUNOZ, INDIVIDUALLY, AJ AREVALO, INDIVIDUALLY AND ALEX MARTINEZ, INDIVIDUALLY | § § § § § § | Case Type: **Injury or Damage - Other (OCA)** <br> Date Filed: **02/15/2018** <br> Location: **332nd District Court** |

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | **Arevalo, A J** | |
| **Defendant** | **Martinez, Alex** | |
| **Defendant** | **Munoz, Ruben** | |
| **Defendant** | **The City of Donna** | |
| **Plaintiff** | **Cardenas, Allen Andres** | **FRANZ, CHRIS** <br> *Retained* <br> 956-682-3660(W) |
| **Plaintiff** | **Cardenas, Daniel** | **FRANZ, CHRIS** <br> *Retained* <br> 956-682-3660(W) |
| **Plaintiff** | **Cardenas, Maria Isabel** | **FRANZ, CHRIS** <br> *Retained* <br> 956-682-3660(W) |
| **Plaintiff** | **Juarez, Norma Isabel** | **FRANZ, CHRIS** <br> *Retained* <br> 956-682-3660(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 02/15/2018 | Plaintiff's Original Petition (OCA) |
| 02/20/2018 | Request for Service |
| 02/20/2018 | **Citation** |

| | Served | Returned |
|---|---|---|
| The City of Donna | Served 02/21/2018 | Returned 02/27/2018 |
| Munoz, Ruben | Served 02/26/2018 | Returned 02/27/2018 |
| Arevalo, A J | Served 02/24/2018 | Returned 02/27/2018 |
| Martinez, Alex | Served 02/23/2018 | Returned 02/27/2018 |

| | |
|---|---|
| 02/20/2018 | Citation Issued |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| **Plaintiff** Cardenas, Maria Isabel | | | |
| Total Financial Assessment | | | 335.00 |
| Total Payments and Credits | | | 335.00 |
| **Balance Due as of 03/06/2018** | | | **0.00** |

| | | | | |
|---|---|---|---|---|
| 02/15/2018 | Transaction Assessment | | | 299.00 |
| 02/15/2018 | EFile Payments from TexFile | Receipt # DC-2018-013034 | Cardenas, Maria Isabel | (299.00) |
| 02/20/2018 | Transaction Assessment | | | 34.00 |
| 02/20/2018 | EFile Payments from TexFile | Receipt # DC-2018-013645 | Cardenas, Maria Isabel | (34.00) |
| 02/27/2018 | Transaction Assessment | | | 2.00 |
| 02/27/2018 | EFile Payments from TexFile | Receipt # DC-2018-016337 | Cardenas, Maria Isabel | (2.00) |

**EXHIBIT A-1**

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

CAUSE NO. **C-0626-18-F** _____

| | | |
|---|---|---|
| MARIA ISABEL CARDENAS, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND AS | § | |
| REPRESENTATIVE OF THE ESTATE | § | |
| OF INOCENCIO CARDENAS, DECEASED; | § | |
| DANIEL CARDENAS, | § | |
| ALLEN ANDRES CARDENAS and | § | |
| NORMA ISABEL JUAREZ | § | |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | HIDALGO COUNTY, TEXAS |
| | § | |
| THE CITY OF DONNA. | § | |
| RUBEN MUNOZ, INDIVIDUALLY, | § | |
| AJ AREVALO, INDIVIDUALLY and | § | |
| ALEX MARTINEZ, INDIVIDUALLY | § | |
| *Defendants* | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE DISTRICT COURT:

COME NOW, **MARIA ISABEL CARDENAS, INDIVIDUALLY, AS NEXT FRIEND OF DANIEL CARDENAS, A MINOR, AND AS REPRESENTATIVE OF THE ESTATE OF INOCENCIO CARDENAS; ALLEN ANDRES CARDENAS and NORMA ISABEL JUAREZ** (hereinafter referred to as "PLAINTIFFS") complaining of the CITY OF DONNA, OFFICER RUBEN MUNOZ, OFFICER AJ AREVALO and SERGEANT ALEX MARTINEZ and for cause of action would respectfully show unto this Honorable Court as follows:

### NATURE OF THE CASE

1.   This is a wrongful death and survival action asserted the Texas Wrongful Death Act asserting common law claims for assault and battery and other claims arising under the United States Constitution, particularly under the provisions of the Due Process Clause and the Fourth Amendment to the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code § 1983, seeking damages against Defendants for

**EXHIBIT A-2**

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

committing acts, under color of law, with the intent and for the purpose of depriving Inocencio

Cardenas of rights secured under the Constitution and laws of the United States.

## PARTIES

2.  Plaintiff, MARIA ISABEL CARDENAS, is a resident alien lawfully residing in Hidalgo

County, Texas.   She is the widow of Inocencio Cardenas, deceased.

3.  Plaintiff, DANIEL CARDENAS, is a citizen of the United States currently residing in

Hidalgo County, Texas.  He is an adult son of Inocencio Cardenas, deceased.

4.  Plaintiff, ALLEN ANDRES CARDNEAS, is a citizen of the United States currently

residing in Hidalgo County, Texas.   He is an adult son of Inocencio Cardenas, deceased.

5.  Plaintiff, NORMA ISABEL JUAREZ, is a resident alien, lawfully residing in Hidalgo

County, Texas.  Norma Juarez is the surviving mother of Inocencio Cardenas, deceased.

6.  The four plaintiffs named above are the sole wrongful death beneficiaries of Inocencio

Cardenas entitled to recover under the Wrongful Death Act and the sole heirs of his estate.  No

administration of the estate is pending and no administration is necessary.

7.  At the time of his death, Inocencio Cardenas was a citizen of the United States residing in

Hidalgo County, Texas.

8.   Defendant, CITY OF DONNA, is a governmental entity located within the State of Texas,

which may be served by delivering a copy of the petition and citation to the Donna City Attorney,

Eddy Trevino.

9.  Defendant, RUBEN MUNOZ, is a patrol officer employed by the City of Donna Police

Department and was acting within the scope of his employment and under color of statutes,

ordinances, rules and regulations, customs and usage of the City of Donna. At the time of the

incident, Officer Ruben Munoz assumed his role as a peace officer. Officer Munoz can be served

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

with process by delivering a copy of the petition and citation at an address to be provided under seal due to his role in law enforcement.

10. Defendant, AJ AREVALO, is a patrol officer employed by the City of Donna Police Department and was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs and usage of the City of Donna. At the time of the incident, Officer Arevalo assumed his role as a peace officer. Officer Arevalo can be served with process by delivering a copy of the petition and citation at an address to be provided under seal due to his role in law enforcement.

11. Defendant, ALEX MARTINEZ, is a sergeant employed by the Donna Police Department and was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs and usage of the City of Donna. At the time of the incident, Sergeant Martinez assumed his role as a sergeant and peace officer. Sergeant Martinez can be served with process by delivering a copy of the petition and citation at an address to be provided under seal due to his role in law enforcement.

## VENUE

12.  Venue is proper in Hidalgo County under Texas Civil and Practice and Remedies Code, section 15.002 because the acts, events or omissions giving rise to this claim occurred in Hidalgo County, Texas, and because the individual defendants resided in Hidalgo County at the time of accrual of Plaintiffs's causes of action.

## FACTUAL BACKGROUND

### A.  Facts Demonstrating Excessive Force

13.  On February 15, 2016, at approximately 5:15 p.m., two 911 calls were made to the Donna Police Department reporting that a man (Inocencio Cardenas) was acting strangely as a result of a

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

drug overdose. Rather than immediately dispatching emergency medical services providers, the Donna Police Department dispatched police officers to the scene, 217 S. 7th St. in Donna, Texas. Officer Munoz and his partner, Officer Arevalo responded in their assigned patrol car and Sergeant Martinez also responded and arrived at the same time as Officers Munoz and Arevalo.

14.   Upon encountering Mr. Cardenas outside on the front lawn, Officers Munoz and Arevalo and Sergeant Martinez observed that Mr. Cardenas was lying down on the grass facing upward and was speaking nonsensical gibberish. All three officers suspected that he was all "drugged up." Mr. Cardenas did not acknowledge the officers' presence nor did he respond to their questions. Officer Munoz patted down Mr. Cardenas and he did not have any weapons.

15. When Mr. Cardenas arose from the ground to stand up, Officer Munoz and Sergeant Martinez grabbed his arms to seize him, despite the fact that he was unarmed, was not acting aggressively or in a hostile manner, had not committed a crime, was on private property and was not a threat to the officers or to any third parties. In response to this unprovoked aggression, Mr. Cardenas attempted to break free from the grip of Officer Munoz and Sergeant Martinez. Officers Munoz and Arevalo and Sergeant Martinez and then wrestled Mr. Cardenas to the ground and attempted to handcuff him.

16. Mr. Cardenas was a 38-year old man weighing approximately 180 pounds. Officer Munoz and Sergeant Martinez were each much larger than Mr. Cardenas, with each weighing significantly more than 200 pounds. Officer Arevalo was a similar size and build to Mr. Cardenas.

17. Some years before the incident in question, the City of Donna supplied Officer Munoz and Sergeant Martinez with the same X26 model taser without any training in its proper use, as further alleged below. Despite receiving no training from the City of Donna, Officer Munoz and Sergeant

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

Martinez each had used their taser on multiple occasions in incidents prior to the date of the incident in question.

18. Officer Munoz and Sergeant Martinez each were aware of and knew certain facts as it relates to the taser in question. Officer Munoz and Sergeant Martinez knew the X26 taser had two modes of firing: drive-stun and probe. Officer Munoz and Sergeant Martinez also knew that *only* the probe mode could effect physical and neuromuscular incapacitation, which is accomplished via delivery of an electrical current to the muscles causing disruption of voluntary control. Officer Munoz and Sergeant Martinez therefore knew that the use of the taser in probe mode, if justified under the circumstances, would be the most effective way to gain control over an individual who is physically resisting being handcuffed. Officer Munoz and Sergeant Martinez also knew that the drive stun mode only causes extreme pain and that the sole purpose of the drive stun mode is to gain compliance from a noncompliant individual through the imposition of pain. Officer Munoz and Sergeant Martinez also knew that using the taser in drive stun mode multiple times on a suspect who is not feeling or does not react to the pain is a futile and unreasonable use of potentially deadly force.

19. In the process of attempting to handcuff Mr. Cardenas while he was on the ground, Officer Munoz removed his taser and without providing any advance warning to Mr. Cardenas, shocked him for the first time using the drive-stun mode on his ribcage. In post-incident interviews, all three officer defendants stated that Mr. Cardenas displayed no verbal or physical reaction whatsoever to the first tasing and appeared to be unaffected.

20. At the time of the first tasing and for all relevant times thereafter, Mr. Cardenas was on the ground and was under the physical control of Officers Munoz and Arevalo and Sergeant Martinez. Despite the fact that Officers Munoz and Arevalo and Sergeant Martinez had control

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

over Mr. Cardenas and despite the fact that the first tasing in drive-stun mode had no beneficial or recognizable effect on compliance, Officer Munoz continued to repeatedly use the taser in drive-stun mode on Mr. Cardenas—in a plainly unreasonable and excessive use of potentially deadly force.

21. In total, Officer Munoz tased Mr. Cardenas in drive-stun mode on four separate occasions. Officers Munoz and Arevalo and Sergeant Martinez all stated afterwards that none of the tasings had any recognizable effect, verbally or physically, on Mr. Cardenas.  After tasing Mr. Cardenas to no effect for the third time, Officer Munoz recognized that the use of this potentially deadly force was futile and unreasonable, and he decided not to use it anymore, especially because the three officers had Mr. Cardenas under control. However, Sergeant Martinez, who was Officer Munoz's superior officer, directed Officer Munoz to use the taser a fourth time.  In compliance with the order from his superior officer, Officer Munoz tased Mr. Cardenas a fourth time, to no effect.

22. For each of the four tasings, Officer Munoz applied the drive-stun shocks to Mr. Cardenas's chest area.  If Officer Munoz had been properly trained he would have known that officers are taught to avoid close-range tasings the chest area in order to avoid inducing cardiac arrest, particularly with an individual who is suspected to be under the influence of drugs who presents in an excited state.

23. According to an eyewitness, the fourth tasing that was ordered by Sergeant Martinez Sergeant Martinez and committed by Officer Munoz occurred after Mr. Cardenas was already handcuffed and had stopped resisting.

24. Even after the four tasings and after Mr. Cardenas was handcuffed, Officers Munoz and Arevalo and Sergeant Martinez continued to inflict unreasonable and excessive force upon Mr.

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

Cardenas.   While Mr. Cardenas was lying face down in the grass and handcuffed and no longer resisting arrest, Officers Munoz and Arevalo and Sergeant Martinez each piled onto to Mr. Cardenas (on different parts of this body), with the weight of the each of their bodies pressed down upon Mr. Cardenas, cutting off Mr. Cardenas' access to oxygen and essentially suffocating him.

25. Officers Munoz and Arevalo and Sergeant Martinez did not cease applying such suffocating physical pressure until Mr. Cardenas's went into respiratory arrest and his ears turned blue/purple.

26. The multiple tasings by Officer Munoz and Sergeant Martinez and excessive physical force and suffocation committed by Officers Munoz and Arevalo and Sergeant Martinez, caused Mr. Cardenas to go into cardiac and respiratory arrest and ultimately caused him to die.

27. Despite being trained in cardiopulmonary resuscitation, and despite the fact that Mr. Cardenas had no pulse or respirations, none of the defendant officers attempted to administer cardiopulmonary resuscitation.  Emergency medical service providers did not arrive until at least 10 to 15 minutes after Mr. Cardenas's went into respiratory and cardiac arrest (when Officers Munoz and Arevalo and Sergeant Martinez saw his ears turn blue).  The EMS workers who arrived on the scene found Mr. Cardenas face up on the ground and unresponsive with no pulse, blood pressure or respirations. Mr. Cardenas was transported by EMS workers to Knapp Medical Center where resuscitative efforts were attempted unsuccessfully.  Mr. Cardenas died at approximately 7:30 PM on February 15, 2016.

28. The autopsy report and autopsy photographs demonstrate the burn injuries from the drive-stun taser firings inflicted on Mr. Cardenas by Officer Munoz and Sergeant Martinez.  The autopsy report also reflects multiple internal and external contusions and abrasions all over Mr. Cardenas's body, including his head, lip, torso and all extremities.

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0626-18-F

## B. Factual Basis of Municipal Policy Liability

29.   The City of Donna and its Police Department have unreasonably and totally failed to adopt a taser use of force policy and have failed to train its officers in the proper use of tasers, despite arming most of its patrol officers with tasers.

30.   In response to an open records request seeking all policies of City of Donna and the Donna Please Department relating to the use of force and the use of tasers, the City of Donna produced a single policy, enacted by the Donna City Council in 2007, Ordinance No. P-2007—04-36, which relates to the use of tasers by the City of Donna's "Tactical Entry Team."  A copy of the ordinance is attached to this petition as Exhibit A. The ordinance adds a policy to the Police Department Manual which relates to the use of nonlethal force by the Department's "Tactical Entry Team." This policy clearly does not apply to officers who are not on the Tactical Entry Team--such as Defendants Munoz, Martinez and Arevalo on the date of the incidents in question.

31.   The City of Donna also has clearly failed to train its officers, such as Officer Munoz and Sergeant Martinez, in the proper use of tasers.  In addition to using the taser unnecessarily, Officer Munoz and Sergeant Martinez used it improperly—they used it for the first time without warning Mr. Cardenas, they clearly did not know the difference between the drive-stun and prong modes and they continued to use the wrong and inappropriate mode despite knowing that it would not be effective.  They were also not trained on the proper body locations to use the drive-stun method, as evidenced by their repeated close-range drive shocks of Mr. Cardenas in the dangerous chest area in contravention of standard taser training rules and recommendations.

32. The City of Donna's adoption of a use of force policy for tasers only in the context of the "Tactical Entry Team" and consciously and deliberately choosing not to adopt of taser use of force policy for the rest of its police force, and its failures to train its patrol officers in proper and

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

reasonable taser use amount to an intentional choice and deliberate indifference by the City's

policymakers (its City Council and its police chief)  because the likelihood of unconstitutional

consequences of the City of Donna's omissions are obvious.

## CAUSES OF ACTION

### A. § 1983 - Excessive Force

33.   Plaintiffs hereby adopt, incorporates, restates and re-alleges paragraphs 1 through 32,

inclusive, with regard to all causes of action.

34.   Plaintiffs plead that Defendants Munoz, Martinez and Arevalo used excessive and deadly

force in the course of their seizure and arrest of Inocencio Cardenas, a free citizen, in violation of

the Fourth Amendment and its "reasonableness" standard. Plaintiffs assert Mr. Cardenas was

unlawfully tased by Defendants Munoz and Martinez and was unlawfully assaulted by Defendants

Munoz, Martinez and Arevalo. Said actions resulted directly from the use of force that was clearly

excessive to the need, and the use of force was objectively unreasonable.

35.   To establish that Defendants Munoz, Martinez and Arevalo violated Inocencio

Cardenas's constitutional rights to be free from excessive force, Plaintiffs must show: a) An injury;

b) which resulted from the use of force that was clearly excessive to the need; and c) the

excessiveness of which was objectively unreasonable.

36.   As stated in the facts section above, Inocencio Cardenas suffered multiple injuries and

died as a direct result of the actions of Defendants Munoz, Martinez and Arevalo. The actions and

omissions of Defendants Munoz, Martinez and Arevalo were "objectively unreasonable" in light

of the facts and circumstances confronting the officers without regard to their underlying intention

or motivation. Clearly, the facts and circumstances of this particular incident demonstrate the

unreasonableness of said actions, including that Inocencio Cardenas was unarmed; that prior to

C-0626-18-F

being physically seized by Officer Munoz and Sergeant Martinez, Mr. Cardenas was not committing a crime was on private property and was not a threat of danger to the officers or to any third parties; that Officer Munoz and Sergeant Martinez continued to futilely drive-stun tase Mr. Cardenas an additional three times after they knew he was not reacting in any way such drive-stuns and when Mr. Cardenas was fully under the control and physical restraint of Defendants Munoz, Martinez and Arevalo <u>without</u> the use of the taser; that Sergeant Martinez ordered Officer Munoz to use the taser a fourth time despite the fact that Officer Munoz had already decided that a fourth tasing would clearly be futile and unreasonable; that Officer Munoz and Sergeant Martinez tased Mr. Cardenas a fourth time when Cardenas was already handcuffed and had stopped resisting; and that while Mr. Cardenas was lying face down in the grass and handcuffed and no longer resisting arrest, Defendants Munoz and Arevalo and Sergeant Martinez each piled on top of Mr. Cardenas with the weight of the each of their bodies pressed down upon Mr. Cardenas, cutting off Mr. Cardenas' access to oxygen and essentially suffocating him.   For these reasons, the death-inducing force used by Defendants Munoz, Martinez and Arevalo clearly excessive to the need and the excessiveness was objectively unreasonable.

**B.  Municipality Liability Under 42 U.S.C. §1983 and the Fourth Amendment to the US Constitution**

37.  Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs 1 through 36, inclusive, with regard to all causes of action.

38.  This cause of action is to redress the deprivation under the color of policy, custom, and practice of rights and privileges secured to Inocencio Cardenas by the Fourth Amendment to the United States Constitution.

39.  The elements of a cause of action under § 1983 against a governmental entity are:

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0626-18-F

a. The Plaintiff  (or Plaintiffs' decedent) is deprived of rights under the United States Constitution;

b. Such deprivation is caused by a person acting under color of state law;

c. The governmental entity adopted, or failed to adopt, a policy statement, ordinance, regulation or decision adopted and promulgated by the governmental entity's lawmaking officers or by an official to whom the law makers delegate law-making authority or a persistent, widespread practice of officials or employees of the governmental entity which, though not authorized or officially adopted and promulgated, the policy is so common and well settled as to constitute a custom that fairly represents policy of the governmental entity; and

d. The promulgation of the policy by the City of Donna was done so with deliberate indifference to known or obvious consequences that violations of constitutional rights would occur and the unconstitutional policy is the moving force behind the deprivation of the Plaintiffs rights.

40.     At all relevant times mentioned here, Donna employed Defendants Munoz, Martinez and Arevalo as police officer employees of the Donna Police Department. Donna provided these employees and agents with official badges, identification, and uniforms, which designated and described their bearers as Donna police officer employees.

41.     At all relevant times mentioned here, Defendants Munoz, Martinez and Arevalo, separately and in concert, acted under the color of law, as well as under the color of policies, practices, and customs of Donna. Each of these Defendants deprived Inocencio Cardenas of the rights, privileges, and immunities secured to him by the Fourth Amendment to the United States Constitution and the laws of the United States.

42.     The facts alleged above are part of the customs, practices, polices, and decisions of Donna, including but not limited to, the following:

a. Unreasonably and totally failing to adopt a taser use of force policy applicable to patrol officers like Officers Munoz and Arevalo and to Sergeant Martinez;

b. Failing to train its officers in the proper use of tasers, despite arming most of its patrol officers with tasers;

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

    c.   Allowing officers to use tasers when not necessary and when compliance has already been obtained or when compliance could be gained through an alternative and lesser force option; and

    d.   Allowing its officers to use tasers when multiple officers were present and physically capable of restraining the individual in question.

43.    Each of these customs and/or policies was actually known, constructively known and/or ratified by the City of Donna, the Donna Police Department and its policymaker, its Chief of Police and/or its city council, and were promulgated with deliberate indifference to Plaintiffs rights, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, and specifically deprived Inocencio Cardenas of his Fourth Amendment right to be free from unjustified intrusions on his personal security. The known and obvious consequence of these policies was that Donna Police Department officers and specifically Defendants Munoz, Martinez and Arevalo would be placed in recurring situations in which the constitutional violations that occurred in this incident would result.

44.    Under the Fifth Circuit's opinion in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985), cert denied, 480 U.S. 917 (1987), liability can be imposed on the City of Edinburg based on inadequate training of Defendants Munoz, Martinez and Arevalo and the City's policy/custom of dangerous recklessness. According to the *Grandstaff* Court:

> Conscious indifference to widespread incompetence or misbehavior may be more than a matter of extreme negligence and more than a failure to instruct or train. If it is deliberate police policy to demand instant compliance, heedless of rights and risks, abuses - i.e., incompetence and misbehavior – will occur when officers of varying judgment and stability encounter resistance. If unconfined the policy ordains use of the ultimate compulsion, the firearm, upon any appearance of resistance and with only imagined justification. That policy employs armed officers who subject the public to the deprivation of their constitutional rights. Where the city policymaker knows or should know that the city's police officers are likely to shoot to kill without justification and without restraint, so as to endanger innocent

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0626-18-F

third parties, the city should be liable when the inevitable occurs and the officers do so.

*Id.* at 170.

### B. Qualified Immunity Under § 1983

45.     Plaintiffs hereby adopt, incorporates, restates and re-alleges paragraphs 1 through 44, inclusive, with regard to all causes of action.

46.     Defendants Munoz, Martinez and Arevalo were carrying out a governmental function in employing the excessive use of force on Inocencio Cardenas. Government actors can be entitled to qualified immunity to their individual liability but this immunity is waived if the complainant shows that:

a. the individual's acts deprived the party of constitutional rights under color of law
b. the deprived rights were clearly established and constitutional rights which existed at the time of the acts; and
c. such acts were not objectively reasonable under the circumstances, that is, no reasonable official could have believed at the time that the conduct was lawful.

47.     In *Kinney v. Weaver,* the Fifth Circuit explained the "clearly established" prong as follows:

Qualified immunity should not be denied unless the law is clear in the more particularized sense that reasonable officials should be "on notice that their conduct is unlawful." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). The central concept is that of "fair warning": The law can clearly be established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.

*Kinney*, 367 F.3d 337, 350 (5th Cir. 2004).

48.     In *Newman v. Guedry*, the Fifth Circuit Court addressed whether the law on the use of tasers was clearly established at the time of the event that occurred before the incident between Plaintiff, Officer Eubank and Officer Rowell:

Guedry contends that he had no reasonable warning that tasing Newman multiple times violated Newman's constitutional rights, because there was then no binding case law on the

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0626-18-F

appropriate use of tasers. Lawfulness of force, however, does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.

*Newman,* 703 F.3d 757, 763-64 (5th Cir.2012).

49. Here, at the time Officer Munoz and Sergeant Martinez first grabbed Mr. Cardenas's arms to seize him, he was not armed, was not acting aggressively or in a hostile manner, had not committed a crime, was on private property and was not a threat to the officers or to any third parties. Officer Munoz drive-stunned Inocencio Cardenas for the first time without any advance warning. Then, with knowledge that the drive-stun was not working they continued to drive-stun him in a dangerous area of his body, with further knowledge that *only* the probe mode could effect physical and neuromuscular incapacitation. Despite the fact that Officers Munoz and Arevalo and Sergeant Martinez had control over Mr. Cardenas and despite the fact that the first tasing in drive stun mode had no beneficial or recognizable effect, Officer Munoz continued to repeatedly use the taser in drive-stun mode on Mr. Cardenas—in a plainly unreasonable and excessive use of potentially deadly force. The fourth taser was ordered by Sergeant Martinez with clear knowledge that it would be futile and under circumstances indicating that it was objectively unreasonable and excessive. The fourth tasing took place when Mr. Cardenas was already fully handcuffed, lying prone in the grass, and no longer resisting. Finally, after all the tasings, while Mr. Cardenas was lying face down in the grass and handcuffed and no longer resisting arrest, Officers Munoz and Arevalo and Sergeant Martinez each piled on top of Mr. Cardenas with the weight of the each of their bodies pressed down upon Mr. Cardenas, cutting off Mr. Cardenas' access to oxygen and essentially suffocating him.

50. These actions taken by Defendants Munoz, Martinez and Arevalo were excessive and unreasonable under clearly established law.

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

C-0626-18-F

51. The acts of Defendants Munoz, Martinez and Arevalo clearly violated established statutory or constitutional rights of which a reasonable person would have known, including the constitutional rights afforded by the Due Process Clause, and Fourth Amendment of the United States Constitution.

**C.  Assault and Battery**

52.    The allegations set forth in paragraphs 1 through 51 are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this complaint. Furthermore, the claims brought under this section solely apply to Defendants Munoz, Martinez and Arevalo. Any reference to "Defendants" in this section only applies to Defendants Munoz, Martinez and Arevalo.

53.    At all times material and relevant herein, Defendants, by acts and/or omissions and under color of state law did then and there intentionally, knowingly, and/or recklessly cause severe personal injury and wrongful death to Inocencio Cardenas, without justification.

54.    Under Texas law, the cause of action for excessive force is simply one for assault and battery. Consequently, Plaintiffs allege that Defendants committed an assault upon Inocencio Cardenas when they intentionally, knowingly, and/or recklessly tased him when unnecessary and with excessive force and by piling on top of him and causing him to be unable to breathe. At no time prior to or during the assault did Inocencio Cardenas consent. Said assaultive conduct by Defendants was committed intentionally, knowingly, and/or recklessly and was the proximate cause of bodily and emotional injuries and the wrongful death of Inocencio Cardenas. Said injuries and wrongful death were the direct and immediate consequence of Defendants' wrongful act and a natural and direct result of the assault.

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

55.     At no time were Defendants privileged to take the action as force was not necessary. Moreover, Defendants' assault and battery of Plaintiffs was not objectively reasonable when balancing the amount of force used against the need for force.

## DAMAGES

56.     Plaintiffs hereby adopt, incorporate, restate and re-allege paragraphs I through 55 inclusive, with regard to all causes of action.

57.     As a result of Defendants' statutory and constitutional violations, Plaintiffs have suffered serious and substantial damages and injuries.

58.     At the time of her death, Inocencio Cardenas was in reasonably good health with a normal life expectancy.

59.     Plaintiffs seek damages under the Texas Wrongful Death Act, including pecuniary losses of care, maintenance, support, services, advice, counsel, and contributions of a pecuniary value.  They also have suffered additional losses by virtue of the destruction of the marital and parent-child relationship, including the benefits flowing from love, comfort, companionship, society, emotional support, and happiness. They have suffered mental depression and anguish, emotional pain, torment, suffering, grief and sorrow as a result of the death of their father / husband.  In reasonable probability, they will continue to suffer the foregoing damages for a long time in the future.

60.     Plaintiffs also seek recovery for the conscious pain, suffering and mental anguish that Inocencio Cardenas suffered prior to his death and reasonable and necessary funeral and burial expenses incurred as a result of his wrongful death.

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

## ATTORNEY'S FEES AND COSTS

61.     Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, Plaintiffs assert the right to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings if they prevail.

## RELIEF REQUESTED

62.     The preceding factual statements and allegations are incorporated by reference.

63.     For these reasons, Plaintiffs pray for judgment against Defendants, any or all of them, for the following:

a.   Actual damages;
b.   Pre-judgment and post-judgment interest;
c.   Statutory attorney's fees and expenses;
d.   Punitive and exemplary damages against individual Defendants Munoz, Martinez and Arevalo in an amount to be determined and as allowed by the Court;
e.   Costs of Court; and
f.   Such other and further relief as the Court deems just and equitable including appropriate.

## JURY DEMAND

Plaintiff respectfully demands trial by jury and has tendered the appropriate fee for the same

## PRAYER

**WHEREFORE,** Plaintiffs respectfully request Defendants to be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Defendants. Plaintiffs further respectfully request that they be afforded all due expediency within the discretion of this Honorable Court to facilitate the preservation of evidence, to demonstrate that such unconscionable conduct will not be tolerated in a civilized society, and to ensure that justice may be served.

Electronically Filed
2/15/2018 3:05 PM
Hidalgo County District Clerks
Reviewed By: Alexis Bonilla

**C-0626-18-F**

Respectfully submitted,

**PERALEZ FRANZ L.L.P.**
1416 Dove Ave.
McAllen, Texas 78504
Telephone No. (956) 682-3660
Facsimile No.  (956) 682-3848
Service Email: service@peralezfranzlaw.com

By: _____
         CHRIS FRANZ
         State Bar No.: 00792514

*ATTORNEYS FOR PLAINTIFFS*

C-0626-18-F

ORDINANCE NO. P-2007-04-36

**AN ORDINANCE OF THE CITYOF DONNA, TEXAS AMENDING THE POLICE DEPARTMENT MANUAL BY ADDING A SECTION ON USE OF FORCE POLICIES; CALLING FOR AN EFFECTIVE DATE AND OTHER MATTERS RELATED THEREOF.**

**BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF DONNA, TEXAS THAT THE FOLLOWING POLICY SHALL BE ADDED TO THE POLICE DEPARTMENT MANUAL:**

## DONNA POLICE DEPARTMENT
### Amended 5/01/2007

### USE OF FORCE AMMENDMENT
### TACTICAL ENTRY TEAM
### Flash Bang-Taser Gun, High Volume Pepper Spray

I.   **POLICY "TACTICAL TEAM"**

Police Officers are confronted daily with situations requiring the use of force to effect an arrest or ensure public safety.  Although many decisions and actions of police officers have serious consequences, none are as irrevocable as the decision to use force.  The degree of force used, depends on what the officer perceives as reasonable and necessary, under the circumstances, at the time he decides to use force.

The Donna Police Department supports the use of less than lethal weapons to defuse violent situations confronting the Tactical Team. There are various non-lethal means to defuse violent situations confronting law enforcement. **There is no single non-lethal weapon that is capable of handling every occurrence successfully. Additionally, despite the name "Non-Lethal" there is no guarantee that any non-lethal weapon cannot positively cause death.**
The application of non-lethal force must be individually assessed for a desirable outcome in which the least amount of injury to everyone involved is maintained. For the Donna's Tactical Team and designated personnel to be successful in handling high- risk situations, it must possess the skills to use these tools and maintain an inventory of specialized non-lethal weapons such as **High Volume Pepper Spray, Taser Gun and Flash bangs/ Distraction Devices.**
These options give the Tactical Team workable options in resolving the high-risk situations using the lowest level of force possible.

II.   **PURPOSE**
To establish guidelines governing the use of force in relation to f Flash bangs-Taser guns, High Volume Pepper Spray

1

C-0626-18-F

### III.    DEFINITIONS.

**DTT**-Donna's Tactical Team.

**DTT Commander-** The DTT Commander will be designated by the Chief Of Police.

**DTT Co-Commander-** The Co-Commander will be designated by the Commander and can change Mission to Mission.

**High Risk Situations-**any situation that by its very nature is capable of producing death or serious bodily injury to anyone. (Officers and Civilians)

**High Risk Search Warrants/Arrest Warrants-**  Those occasions where Intelligence and Previous arrest history indicate that the locations to be search or the person sought to be arrested, poses a great danger to police.  The presence of weapons to be encountered and the resistance of the persons sought to be arrested which poses a great danger to police.  Those occasions that by their very nature make knocking and announcing your presence a dangerous and futile endeavor which exposes the Tactical Team Members to greater risk of injury and enhances the destruction of evidence which would inhibit an effective investigation.

**Barricaded Subject -** Individuals who are wanted by police for criminal matters or medical matters and have confined themselves in a structure to prevent the police from effecting their detention.

**Hostage Situation-** When an actor has taken an innocent civilian by force to facilitate the commission of a felony or to facilitate escape or to use as a shield against police attempts to effect an arrest. (Includes family members,)

**Stand-offs-** Are armed confrontations between police and offender(s) who law enforcement officers have probable cause to arrest.  The offenders seek to prevent arrest by seeking an armed conflict with police.

**High Volume Pepper Spray:** A large unit that dispenses high-powered pepper spray in a cone shaped emission up to 25 feet.

**TASER-GUN-** a less than lethal weapon that dispenses electric probes into the target at a distance of about 15 feet. The probes penetrate approximately ½ -2 inch depending on clothing.  The taser gun discharges Electrical energy.  The energy causes temporary disruption of the targets muscular system.  This weapon enables target to be taken into custody without serious injury.  The recovery from taser gun can be instantaneous or take a few minutes.

2

**POP - EXHIBIT "A"**

C-0626-18-F

**FLASH-BANGS/DIVERSION DEVICES-** Are low explosive, non lethal, mechanical device that upon ignition, emit a loud noise, bright light, and heat. A flash /sound diversion device is **intended to distract or divert ones attention** when properly used by the **DTT TEAM.** The Primary purpose of using the device is to provide distraction and then allow the DTT team to exploit the effects Flash Bangs diversions will work well in providing the tactical team with an edge in High Risk Situations. Thus, the use of flash bangs in some cases **may** prevent the use of **Deadly Force.**

IV      **GUIDELINE FOR USE**

**High Volume Pepper Spray**-the use of High Volume Pepper Spray is a recognized form of non-lethal force which is an effective deterrent. Pepper Sprays reduce resistance for a limited time allowing the Tactical Team to gain the advantage and restore order/effect an arrest without excessive force.

**Justification for using High Volume Pepper Spray** includes but is not limited to the following
   1. To distract potentially dangerous subjects and effect their arrest without the officer getting injured.
   2. To remove aggressive subjects from barricaded structures including passenger vehicles
   3. To defend officers or 3rd persons
   4. To disperse riots
   5. To rescue hostages
   6. Any emergency life threatening situation where its use can possibly save a life

**Types of Chemical agents to be used by DTT**
   1. OC- Oleoresin Capsicum spray sometimes referred to as pepper spray. This agent is an inflammatory agent design to deter physical resistance upon its application.

**Special Considerations:**
   2. any other means available (ie talking the subject out,down etc)
   3. are there children and elderly present
   4. the level of intoxication or mental illness of the subject. The effects of OC will be less effective on an intoxicated subject or an mentally ill subject.
   5. indoor or outdoors "wind factors, blow back, rain factors etc"
   6. method of delivery (liquid munitions or hand deployment)
   7. is quantity sufficient to accomplish objective

**First Aid/Decontamination**
   1. Only after subject has been restrain by handcuffs or by other means
   2. Aeration-Remove subject (s) to fresh air
   3. Calm the subject and restrict his/her activity reduce sweating

3

**POP - EXHIBIT "A"**

C-0626-18-F

4. Flush contaminated areas with large amounts of water
5. Summon E.M.S. if subjects states or appears to be in medical distress major discomfort persists. Notify E.M.S type of agent used
**\*Warning must be given to other Tactical Team Members of its imminent deployment.**

Everyone exposed to pepper spray shall be decontaminated according to the department's policy and procedures. Medical attention shall be provided to those affected that have requested medical attention.

**Justifications for using Taser Gun** includes but is not limited to the following
    **1.** The DTT may use the Taser Gun to gain control of a subject when faced with actual or threatened resistance by the subject.
(exclude passive resistance) When and to the degree the use of the Taser Gun is reasonably necessary based on the officer-to-subject disparity, reaction times, environmental conditions, and the totalitary of the circumstances
**2.** The DTT may use the Taser Gun in Direct Application when the cartridge or projectiles has mis-fired.
**3.** The DTT commander may authorize the use of the less than lethal weapon in those situations where the use of the Taser Gun is the best way of averting a potentially injurious/ or dangerous situations taking into account the totalitary of the circumstances.

**Types of Taser Guns/DTT responsibility**
1. Taser Guns purchased by the department only.
2. Will be issued to Donna Tactical Team Only
3. Shall be carried opposite of duty weapon
4. A record of the Taser Gun and its serial number and the serial number of the cartridges shall be maintain in a log book maintained by the DTT Commander
5. DTT handling the Taser Gun needs to be certified annually
6. Taser Gun barbs/ probes may be removed by the handler or E.M.S personnel
7. Handler needs to collect the barbs and treat them as bio-hazard since they have penetrated the body and disposed of them by placing them in sharp object containers and provided to the ambulance personnel for disposal
8. Collect confetti like identification tags and submit them as evidence.
9. Photograph impact sites and any other injuries whether or not the probes penetrated the body.
10. Download data into computer and make a print out and submit with report
11. Complete use of Force report and submit with the report
12. Summon E.M.S personnel to access the subject.

**Special Considerations for Taser Guns:**

4

**POP - EXHIBIT "A"**

C-0626-18-F

1. Conduct a spark test prior to taking into the field to make sure it works.
2. Conduct spark test Daily when not in use.
3. Do not use in flammable areas

**\* Warning must be given to other Tactical Team Members of the imminent deployment of the Taser Gun to prevent the perception that the team has been fired upon.**

**Justifications for flashbang/distraction devices** includes but are not limited to the following.

1. High Risk Situations
2. Barricaded Subjects in structures (excluding small passenger vehicles unless connected to a bang pole)
3. Hostage Situations
4. Stand-offs
5. High Risk Search Warrants
6. High Risk Arrest Warrants

**Responsibility of the Commander**

1. The planned use of a flash/bang device will require review and and approval by the Commander.
2. The Chief of Police and Lieutenant must be notified of all intended deployments. (prior to briefings with team members)
3. No flashbang will be used without authority from the Commander
4. Disobeying DDT Commander's Order May result in Termination
5. Must maintain a file on team members and maintain training records
6. Maintain an inventory of the flash bang to include date of use, manufacturer, serial number, fuze number.
7. Maintain incident/offense reports to record of all its uses ie hostage situation, high-risk entries etc.
8. Conduct Monthly training of all its Team Members, (classroom, field operations) Keep record of training
9. Have arrangements with E.M.S. to be on stand-bye close to the target location in case of officer injury or civilian injury
10. Have two portable fire extinguishers to suppress any fire that might ignite. (Inside the Tactical Team Vehicle)
11. Develop a safety plan for training exercises to prevent injuries
12. Discipline Tactical Team Members for any act or act of omission that harms the Team or recklessly injures Civilians.

In Emergency situations, (i.e deployment officer becomes incapacitated due to injury) a flash bang or distraction device may be deployed by any member of the Tactical Team. The Emergency deployment shall be reported to the Commander

**Special Considerations regarding the deployment of the FLASH BANGS:**

5

**POP - EXHIBIT "A"**

**C-0626-18-F**

1. The primary concern for the Tactical Team Officer who is deploying the device is to LOOK where he is going to place the device BEFORE he deploys it
2. Do not deploy the device if there is reason to believe children or elderly are present or in close proximity to the deployment area which would cause undue injury to innocent civilians.
3. Do not use in drug labs or other explosive environments that are so hazardous as to cause harm to the Tactical Team.
4. Do Not Deploy in small passenger vehicles unless connected to a bang pole

**SPECIAL NOTE:**

**ALL PERSONNEL INVOLVED IN THE INCIDENT SHALL BE ADVISED WHEN AND IF THE DEPLOYMENT OF FLASH BANGS WILL BE UTILIZED.  THIS IS DONE SO THAT OFFICERS DO NOT CONFUSE THE DIVERSION DEVICE DEPLOYMENT WITH GUN FIRE FROM THE TARGET SUBJECT.**

Effective date will be immediately upon its passage and execution in accordance with the Charter of the City of Donna and otherwise by law.

**PASSED AND APPROVED**, upon first reading on this the 3rd day of **April 2007**.

**PASSED, APPROVED** AND **ADOPTED** upon second and final reading on this 1st day of **May 2007.**

CITY OF DONNA

Ricardo L. Morales
**Ricardo L. Morales**
**Mayor**

Attest:

Martha Alvarado
**Martha Alvarado**
**City Secretary**

Approved as to form and Substance:

Javier Villalobos
**Javier Villalobos**
**City Attorney**

6

**POP - EXHIBIT "A"**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

**NOTICE: Pursuant to TRCP 126: Statement of Inability to Afford Payment of Court Costs or an Appeal Bond filed = NO**

**C-0626-18-F**
**332ND DISTRICT COURT, HIDALGO COUNTY, TEXAS**

**CITATION**
**THE STATE OF TEXAS**

**NOTICE TO DEFENDANT:** You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**The City of Donna**
**Serving, Donna City Attorney Eddy Trevino**
**307 South 12ᵗʰ St**
**Donna, Texas 78537**

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Mario E. Ramirez, Jr., 332nd District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 15th day of February, 2018 and a copy of same accompanies this citation. The file number and style of said suit being C-0626-18-F, **MARIA ISABEL CARDENAS INVIDIDUALLY AS REPRESENTATIVE OF THE ESTATE OF INOCENCIO CARDENAS, DECEASED, DANIEL CARDENAS ALLEN ANDRES CARDENAS AND NORMA ISABEL JUAREZ VS. THE CITY OF DONNA RUBEN MUNOZ, INDIVIDUALLY, AJ AREVALO, INDIVIDUALLY AND ALEX MARTINEZ, INDIVIDUALLY**

Said Petition was filed in said court by Attorney     FRANZ, CHRIS, 1416 DOVE AVE MCALLEN TX 78504.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 20th day of February, 2018.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

**IRENE CACERES, DEPUTY CLERK**

**EXHIBIT A-3**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

C-0626-18-F

## OFFICER'S RETURN

Came to hand on **21** of **February**, 201 **8** at **11:54** o'clock **a** .m. and executed in **Hidalgo** County, Texas, by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the **Plaintiffs Original Petition** (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
| Donna City Attorney Eddy Trevino via city Secretary Laura Balderrama | 2/21/18 | 3:12pm | 307 S. 12th Street Donna, TX 78537 |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____ . I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $ _____
          miles ................$ _____

_____
**DEPUTY**

## COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF, CONSTABLE OR CLERK OF THE COURT

In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is **Angel Serda**, my date of birth is **11-01-1954** and the address is **P.O. Box 720391, McAllen, TX**, and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in **Hidalgo** County, State of Texas, on the **21** day of **February**, 201 **8**.

_____
**Declarant"**

**08 | 31 | 2019    # 10495**

**If Certified by the Supreme Court of Texas
Date of Expiration / SCH Number**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

**NOTICE: Pursuant to TRCP 126: Statement of Inability to Afford Payment of Court Costs or an Appeal Bond filed = NO**

**C-0626-18-F**
**332ND DISTRICT COURT, HIDALGO COUNTY, TEXAS**

**CITATION**
**THE STATE OF TEXAS**

**NOTICE TO DEFENDANT:** You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**Officer Ruben Munoz**
**Donna Police Department**
**207 South 10th St.**
**Donna, Texas 78537**

You are hereby commanded to appear by filing a written answer to the **PLAINTIFFS ORIGINAL PETITION** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Mario E. Ramirez, Jr., 332nd District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 15th day of February, 2018 and a copy of same accompanies this citation. The file number and style of said suit being C-0626-18-F, **MARIA ISABEL CARDENAS INVIDIDUALLY AS REPRESENTATIVE OF THE ESTATE OF INOCENCIO CARDENAS, DECEASED, DANIEL CARDENAS ALLEN ANDRES CARDENAS AND NORMA ISABEL JUAREZ VS. THE CITY OF DONNA RUBEN MUNOZ, INDIVIDUALLY, AJ AREVALO, INDIVIDUALLY AND ALEX MARTINEZ, INDIVIDUALLY**

Said Petition was filed in said court by Attorney FRANZ, CHRIS, 1416 DOVE AVE MCALLEN TX 785044.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 20th day of February, 2018.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

**IRENE CACERES, DEPUTY CLERK**

**EXHIBIT A-4**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

**C-0626-18-F**

## OFFICER'S RETURN

Came to hand on **21** of **February**, 201 **8** at **11:54** o'clock **a** .m. and executed in **Hidalgo** County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant, together with the accompanying copy of the **Plaintiff's Original Petition** (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
| Ruben Munoz | 2-26-18 | 12:57 pm | 207 S. 10th Street Donna, TX 78537 |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the ~~whereabouts~~ of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:  serving ... copy(s) $ _____
       miles .................$_____

**DEPUTY**

### COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF, CONSTABLE OR CLERK OF THE COURT

In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is **Angel Serda**, my date of birth is **11-01-1954** and the address is **P.O. Box 720391, McAllen, TX**, and I declare under penalty of perjury that the foregoing is true and correct.

**EXECUTED** in **Hidalgo** County, State of Texas, on the **27** day of **February**, 201 **8**.

**Angel Serda**
**Declarant"**

**08/31/2019   # 10495**

**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

NOTICE: Pursuant to TRCP 126:  Statement of Inability to Afford Payment
of Court Costs or an Appeal Bond filed =  NO

C-0626-18-F
332ND DISTRICT COURT, HIDALGO COUNTY, TEXAS

CITATION
THE STATE OF TEXAS

**NOTICE TO DEFENDANT:**  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

**Officer A J Arevalo**
**Donna Police Department**
**207 South 10th St.**
**Donna, Texas 78537**

You are hereby commanded to appear by filing a written answer to the **PLAINTIFFS ORIGINAL PETITION** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Mario E. Ramirez, Jr., 332nd District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 15th day of February, 2018 and a copy of same accompanies this citation.  The file number and style of said suit being C-0626-18-F, **MARIA ISABEL CARDENAS INVIDIDUALLY AS REPRESENTATIVE OF THE ESTATE OF INOCENCIO CARDENAS, DECEASED, DANIEL CARDENAS ALLEN ANDRES CARDENAS AND NORMA ISABEL JUAREZ VS. THE CITY OF DONNA RUBEN MUNOZ, INDIVIDUALLY, AJ AREVALO, INDIVIDUALLY AND ALEX MARTINEZ, INDIVIDUALLY**

Said Petition was filed in said court by Attorney FRANZ, CHRIS, 1416 DOVE AVE MCALLEN TX  78504.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 20th day of February, 2018.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

**IRENE CACERES, DEPUTY CLERK**

**EXHIBIT A-5**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

**C-0626-18-F**
**OFFICER'S RETURN**

Came to hand on __21__ of __February__, 201_8_ at __11:54__ o'clock __a__.m. and executed in __Hidalgo__ County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the __Plaintiff Orignal Petition__ (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
| A J Arevalo | 2-24-18 | 6:14am | 207 S. 10th Street Donna, TX 78537 |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____ and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $_____
          miles ...............$_____

_____
**DEPUTY**
**COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF,**
**CONSTABLE OR CLERK OF THE COURT**

In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is __Angel Serda__, my date of birth is __11-01-1954__ and the address is __P.O. Box 720391, M-Allen, TX__, and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in __Hidalgo__ County, State of Texas, on the __27__ day of __February__, 201_8_.

_____
**Declarant"**

__08/31/2019__ __# 10495__
**If Certified by the Supreme Court of Texas**
**Date of Expiration / SCH Number**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

**NOTICE: Pursuant to TRCP 126:  Statement of Inability to Afford Payment of Court Costs or an Appeal Bond filed =  NO**

**C-0626-18-F**
**332ND DISTRICT COURT, HIDALGO COUNTY, TEXAS**

**CITATION**
**THE STATE OF TEXAS**

**NOTICE TO DEFENDANT:**  You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty (20) days after you were served with this citation and petition, a default judgment may be taken against you.

Sergeant Alex Martinez
Donna Police Department
207 South 10th St.
Donna, Texas 78537

You are hereby commanded to appear by filing a written answer to the **PLAINTIFFS ORIGINAL PETITION** on or before 10:00 o'clock a.m. on the Monday next after the expiration of twenty (20) days after the date of service hereof, before the **Honorable Mario E. Ramirez, Jr., 332nd District Court** of Hidalgo County, Texas at the Courthouse at 100 North Closner, Edinburg, Texas 78539.

Said petition was filed on this the 15th day of February, 2018 and a copy of same accompanies this citation.  The file number and style of said suit being C-0626-18-F, **MARIA ISABEL CARDENAS INVIDIDUALLY AS REPRESENTATIVE OF THE ESTATE OF INOCENCIO CARDENAS, DECEASED, DANIEL CARDENAS ALLEN ANDRES CARDENAS AND NORMA ISABEL JUAREZ VS. THE CITY OF DONNA RUBEN MUNOZ, INDIVIDUALLY, AJ AREVALO, INDIVIDUALLY AND ALEX MARTINEZ, INDIVIDUALLY**

Said Petition was filed in said court by Attorney FRANZ, CHRIS, 1416 DOVE AVE MCALLEN TX  78504.

The nature of the demand is fully shown by a true and correct copy of the petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly serve the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

**ISSUED AND GIVEN UNDER MY HAND AND SEAL** of said Court at Edinburg, Texas on this the 20th day of February, 2018.

**LAURA HINOJOSA, DISTRICT CLERK**
**100 N. CLOSNER, EDINBURG, TEXAS**
**HIDALGO COUNTY, TEXAS**

**IRENE CACERES, DEPUTY CLERK**

**EXHIBIT A-6**

Electronically Filed
2/27/2018 2:48 PM
Hidalgo County District Clerks
Reviewed By: Noemi Lamas

C-0626-18-F
## OFFICER'S RETURN

Came to hand on __21__ of __February__, 201 __8__ at __11:54__ o'clock __a__.m. and executed in __Hidalgo__ County, Texas by delivering to each of the within named Defendant in person, a true copy of this citation, upon which I endorsed the date of delivery to said Defendant together with the accompanying copy of the __Plaintiffs Original Petition__ (petition) at the following times and places, to-wit:

| NAME | DATE | TIME | PLACE |
|------|------|------|-------|
| Sergeant Alex Martinez | 2-23-18 | 2:40pm | 207 S. 10th Street Donna, TX 78537 |

And not executed as to the defendant, _____ the diligence used in finding said defendant, being: _____, and the cause of failure to execute this process is: _____ and the information received as to the whereabouts of said defendant, being: _____. I actually and necessarily traveled _____ miles in the service of this citation, in addition to any other mileage I may have traveled in the service of other process in the same case during the same trip.

Fees:   serving ... copy(s) $_____
        miles ..................$_____

_____
**DEPUTY**

## COMPLETE IF YOU ARE PERSON OTHER THAN A SHERIFF, CONSTABLE OR CLERK OF THE COURT

In accordance to Rule 107, the officer or authorized person who serves or attempts to serve a citation must sign the return. If the return is signed by a person other than a sheriff, constable or the clerk of the court, the return must either be verified or be signed under the penalty of perjury. A return signed under penalty of perjury must contain the statement below in substantially the following form:

"My name is __Angel Serda__, my date of birth is __11-01-1954__ and the address is __P.O. Box 720391 McAllen, TX__, and I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED in __Hidalgo__ County, State of Texas, on the __27__ day of __February__, 201 __8__.

__Angel Serda__
**Declarant"**

__08 | 31 | 2019   # 10495__
**If Certified by the Supreme Court of Texas
Date of Expiration / SCH Number**